OPINION
Defendants-appellants, Michael Riley, and his mother, Mabel Parker, appeal the decision of the Butler County Common Pleas Court, Domestic Relations Division, in a divorce action filed by Michael's wife, Joanna Riley. We affirm.
Joanna Riley and Michael Riley were married on March 7, 1987. When they were married, Michael owned a residence on Windridge Drive in Fairfield, Ohio, where the couple resided until they purchased a house on St. Lawrence Drive in Fairfield, Ohio ("marital residence"). Joanna was employed at Internec, where she earned approximately $20,000 annually. Michael was employed at Ford Motor Company, where his yearly earnings averaged in the mid-$60,000 range, although his 1998 earnings indicated that he could earn over $92,000.
When Michael and Joanna purchased the marital residence, Michael sold the Windridge Drive house for approximately $61,000 after his mother, Mabel Parker, gave him $28,000 to pay off the home's mortgage. Michael and Joanna used the proceeds to purchase the marital residence, which was appraised at approximately $155,000. Mabel apparently contributed $31,000 towards the purchase of the marital residence.
After buying the marital residence, Michael and Joanna took a second mortgage in the amount of $58,300. With this money, they purchased a houseboat for $40,000, paid off a $10,600 loan for their Bayliner Merc Cruiser, and took a vacation. In September 1997, Michael and Joanna owed $52,000 for the first mortgage on the marital residence and approximately $56,000 for the second mortgage. At that time, Michael also owned two vehicles that were premarital or nonmarital gifts: a 1988 Ford Mustang and a 1976 Harley Davidson motorcycle.
Joanna filed a complaint for divorce on August 15, 1997. Joanna named both Michael and Mabel as defendants in the complaint. Joanna averred in the complaint that Mabel had purchased gifts for both herself and Michael in the form of household goods and furnishings. Michael filed an answer to Joanna's complaint. Mabel, who had been served with the complaint by certified mail, never answered. Joanna had named Mabel as a party in order to obtain a restraining order prohibiting Mabel from removing property from the marital residence, as Mabel had threatened to do. The trial court did, in fact, grant such a restraining order.
On March 10, 1998, the trial court issued an order directing Mabel to return property she had taken from the marital residence. The order also stated that "the third party defendant must assert any claim to the property she wishes by pleadings to be filed forthwith and served on counsel." While the order did not show whether it had been served on Mabel, Michael's attorney gave Mabel a copy of the order and informed her that she had to respond to the order. Mabel never obtained counsel and never responded to the court's order.
Immediately before the July 24, 1998 trial, Joanna sought to exclude Mabel from the proceedings, arguing that Mabel had never filed responsive pleadings. Since Mabel was a named defendant, however, the magistrate allowed her to remain. Mabel had a list of assets to present as evidence. The magistrate assured Mabel that she would "have [her] say" and allowed her to remain in the courtroom.
Joanna and Michael testified about the value of their marital assets. During her testimony, Joanna introduced a handwritten document listing estimated monetary values for many of the couple's household items. Although Michael cross-examined Joanna regarding the values she placed on several of the items, he offered no estimates of his own for the property. Joanna and Michael agreed that the motorcycle and the Mustang were nonmarital property.
Michael presented Mabel as a witness. Mabel testified, in part, that she had paid off the mortgage on the Windridge Drive house and had made substantial improvements on the home, but she had no understanding that the money would be repaid. Mabel also testified that she "gave" the couple $35,000 for the marital residence and improved the marital residence. Mabel then attempted to introduce a list of the couple's marital assets in which she claimed an interest. The magistrate refused to admit the list, citing Mabel's failure to respond to the March 10, 1998 court order.
After hearing all of the evidence, the magistrate divided the couple's marital property. The magistrate credited Michael with both mortgages on the marital residence, reducing the home's estimated $155,000 value to approximately $47,800. The magistrate also credited Michael with approximately $61,100 for proceeds from the Windridge Drive property.
Joanna kept the houseboat, which the magistrate valued at $36,000. Michael kept the Bayliner, which the court valued at $7,000. Since Michael had offered no valuation alternative to Joanna's, the magistrate valued the household property at $48,000, awarding Michael $40,000 and Joanna $7,550.[1] The magistrate also included in the asset division the Mustang and the motorcycle, which it valued at $4,000 each, for a total of $8,000.
At the conclusion of the property disposition, the magistrate noted a $9,000 discrepancy between the assets awarded to Joanna and those awarded to Michael. The magistrate determined that "it would be fair" to divide the property in this fashion because of the discrepancy between their incomes.
Michael filed objections to the magistrate's property division. In a hearing before the trial court, Michael argued that the magistrate had erroneously included the Mustang and the motorcycle as marital property. Michael also argued that the asset distribution was unfair because the trial court had erroneously valued the household goods and had failed to include the second mortgage on the marital residence in the property distribution.
The trial court modified the magistrate's order. The court found that the magistrate had erroneously included the Mustang and the motorcycle. The trial court determined that the Mustang and the motorcycle were Michael's nonmarital property. The trial court then affirmed "the balance" of the magistrate's decision.
Michael and Mabel filed a timely appeal and raise three assignments of error. We address appellants' claims out of order.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT MABEL PARKER WHEN IT DID NOT ALLOW HER TO PARTICIPATE IN THE TRIAL.
In their second assignment of error, appellants claim that the trial court deprived Mabel, a named defendant, of notice and opportunity to be heard when it allowed her to sit in on the trial, but did not allow her to assert her claims or present evidence regarding her interest in the parties' marital property. Appellee answers that the trial court provided Mabel with adequate notice and opportunity to assert her interest in any marital assets in pleadings before trial, so that she was correctly precluded from asserting those claims at trial when she did not do so.
We are cognizant that this issue raises competing interests. On one hand, a party may not be divested of ownership interest in property without an opportunity to be heard. See Koval v. Koval
(1998), 129 Ohio App.3d 68, 70. At the same time, however, a party may not fail to assert rights and later claim that he or she was denied those rights. See Tribe v. Tribe (Aug. 12, 1993), 1993 WL 311865 at *3, Mahoning App. No. 92 C.A. 86, unreported. In the instant case, we balance both important interests and hold that the trial court acted properly when it refused to allow Mabel to belatedly assert claims to the marital property at trial when she had not previously asserted any claims in pleadings despite the fact that she was a named defendant.
Several appellate courts have held that a trial court errs when it refuses to permit a defendant in a divorce proceeding to present evidence at the final hearing solely because the defendant did not file any responsive pleadings. Bianco v. Bianco (Aug. 27, 1999), 1999 WL 689941 at *4, Trumbull App. No. 97-T-0226, unreported; Campbell v. Campbell (Aug. 13, 1993), 1993 WL 307535 at *3, Gallia App. No. 92 CA 39, unreported; see, also, Tribe, 1993 WL 311865 at *3.[2] We decline, however, to establish such a hard and fast rule, choosing instead to evaluate the parties' actions within the particular context of the proceedings.
We follow the reasoning in Heffernan v. Heffernan (Aug. 19, 1981), 1981 WL 4115 at *2-3, Summit App. No. C.A. 10090, unreported. There, the Ninth District Court of Appeals set out an analysis that balanced the opportunity to be heard against the consequences of the failure to assert rights in divorce proceedings. The Heffernan court first reasoned that a defendant's failure to file responsive pleadings functions as an admission of averments in the plaintiff's complaint under Civ.R. 8(D). 1981 WL 4115 at *2. However, the plaintiff must still prove the truth of the complaint's averments to the court's satisfaction before judgment is granted. Civ.R. 75(M). Where the complaint contains no averments with respect to division of property or other substantive allegations, Civ.R. 8(D) does not apply, and the defendant admits nothing by the failure to file responsive pleadings. Heffernan, 1981 WL 4115 at *2-3.
Accordingly, a defendant who fails to file responsive pleadings is entitled to present evidence where the complaint does not contain substantive averments that the defendant has admitted by failing to assert his or her interest by way of responsive pleadings. See id. at *2. A denial of this right constitutes reversible error. Id. at *3.[3]
Under the Heffernan analysis, however, the converse must also be true: a trial court is not required to permit a defendant to present evidence if his failure to file responsive pleadings amounts to an admission regarding substantive claims to the marital property. In that case, a trial court does not act improperly if it refuses to let a defendant present evidence with respect to the averments. See id. at *2.
Here, Joanna named Mabel as a party to the divorce action in her complaint. In that complaint, Joanna alleged:
 Plaintiff states that the defendant, Mabel E. Parker, is the mother of defendant Michael Steven Riley and has in the past purchased gifts for both plaintiff and the defendant Michael Steven Riley in the form of household goods and furnishings.
Joanna named Mabel as a defendant in order that she could obtain an order restraining her from removing property from the marital residence. If Mabel had a documented legal interest in that marital property, she was a necessary party entitled to the opportunity to be heard. See Koval, 129 Ohio App.3d at 70. However, Mabel, a named defendant, filed no responsive pleading. Although the record indicates that the complaint was served on Mabel by certified mail, she never answered the complaint. Mabel was also apprised of the court's March 10, 1999 order which instructed her to file a pleading to assert any interest she may have had in the marital property. Michael's attorney stated that he gave Mabel a copy of the order and advised her to answer the court order. Mabel, however, never filed any responsive pleading to assert any legal interest in the marital property before trial.
Mabel's failure to file responsive pleadings operates as an admission to the substantive averments in Joanna's complaint. SeeHeffernan, 1981 WL 4115 at *2. Applying Civ.R. 8(D), Mabel essentially admitted that the household goods and furniture she purchased for Joanna and Michael were "gifts." Thus, she admitted that she had no legal ownership interest in the marital property. Moreover, the trial court heard both Joanna's testimony and testimony from Mabel herself indicating that Mabel had gifted substantial assets to Michael and Joanna.[4]
At trial, however, Mabel attempted to assert some undocumented ownership interest in the marital assets and introduce self-serving evidence to that effect. Since Mabel had admitted substantive averments in Joanna's complaint that showed she had no legal interest in the marital property, the trial court did not abuse its discretion when it precluded Mabel from belatedly asserting those claims at trial.
Although we find no error by the trial court in this case, we caution that, in some divorce cases, a person who is not a named party, and therefore does not file responsive pleadings, may have a legal interest in marital property so that he is entitled to an opportunity to be heard. See, e.g., Koval, 129 Ohio App.3d at 70
(court erred by dividing marital asset of necessary, unnamed party). Further, a trial court may err by failing to provide a named party an opportunity to be heard when the party has failed to file pleadings but there are no substantive averments in the complaint to admit or deny with respect to property. SeeHeffernan, 1981 WL 4115 at *2-3. Nonetheless, in this case, the court did not err. Appellants' second assignment of error is overruled.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT MICHAEL RILEY WHEN IT DID NOT MODIFY THE DISTRIBUTION OF ASSETS AND DEBTS AFTER IT MODIFIED THE MAGISTRATE'S DECISION BY DECLARING CERTAIN OF APPELLANT'S ASSETS TO BE NON-MARITAL IN NATURE.
Appellants claim in their first assignment of error that the trial court erred because it reassessed the magistrate's decision, excluding the Mustang and the motorcycle as marital property, but did not reassess the ultimate, inequitable asset distribution once it excluded those assets. In response, appellee claims that, since the ultimate distribution of assets is equitable given the disparity in income, the trial court's decision affirming the distribution does not constitute an abuse of discretion.
The trial court has broad discretion in establishing an equitable division of marital property in any domestic relations action. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 218;Allen v. Allen (1996), 109 Ohio App.3d 640, 641-42. When reviewing a trial court's decision in a domestic relations case, the abuse of discretion standard applies. Id. The term "abuse of discretion," however, suggests more than an error of law or judgment and indicates that the trial court's decision is unreasonable, arbitrary, or unconscionable. Id. Absent an abuse of discretion, the trial court's judgment cannot be disturbed on appeal. Id.
The trial court did not abuse its discretion when it affirmed the magistrate's property distribution. In the original distribution, the magistrate included the Mustang and the motorcycle, then noted that a $9,000 disparity existed. The magistrate found that disparity reasonable because Joanna earned approximately $20,000 a year, while Michael earned approximately $65,000 a year and could earn approximately $92,000 that year. When Michael objected to the distribution, the trial court excluded the Mustang and the motorcycle, which both parties agreed were nonmarital assets. The court affirmed the magistrate's property distribution in all other respects, leaving a $17,000 disparity in the property division between Michael and Joanna.
Appellants contend that the trial court abused its discretion when it failed to reassess the resulting $17,000 disparity in light of its modified asset distribution. The trial court is vested with broad discretion in establishing an equitable division of marital property. Donovan v. Donovan (1996), 110 Ohio App.3d 615,620. We must presume that the trial court considered the applicable provisions of the Revised Code in determining the division of marital assets and liabilities. Reynolds v. Reynolds
(June 12, 1995), Butler App. No. CA94-08-162, unreported. Under R.C. 3105.171(F), the trial court may take into account any factor it finds relevant to an equitable asset distribution.
Here, the magistrate took into account the discrepancy between the parties' income and found a $9,000 disparity equitable. In assessing appellants' objection to the order, the trial court stated that, after modifying the distribution, it adopted "the balance" of the magistrate's decision. Since the trial court's order only modifies the magistrate's decision by excluding the nonmarital assets, we can presume that the trial court considered the resulting discrepancy in the parties' income and the disparity in asset distribution and found it equitable, as had the magistrate. We cannot say that the trial court abused its discretion when it modified the magistrate's order but did not reassess the resulting distribution.
Appellants also assert that the $17,000 discrepancy is not a "fair" discrepancy. However, an asset distribution need not be equal in order to be equitable. R.C. 3105.171(C). Indeed, the different earning abilities of the parties is a factor that could militate toward an unequal distribution of marital property in favor of the spouse with the lesser earning potential. See Hue v.Hue (Aug. 16, 1995), 1995 WL 481494, *2, Hamilton App. No. C-940429, unreported. Given the vast discrepancy between Joanna's $20,000 income and Michael's $65,000 income, as well as his potential to earn $92,000, we cannot say that a $17,000 discrepancy in the marital asset distribution is inequitable. Appellants' first assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN ITS VALUATION AND DISTRIBUTION OF MARITAL ASSETS.
In their third assignment of error, appellants claim that the trial court erred in adopting the magistrate's decision because the magistrate erroneously adopted Joanna's undisputed valuation of household property, and the magistrate mistakenly failed to credit Michael with one of the mortgages on the marital residence. We find no error.
Since rigid rules to determine value cannot be established, the trial court has broad discretion to determine the value of marital property. Donovan, 110 Ohio App.3d at 621. Absent an abuse of discretion, the trial court's decision in domestic relations matters cannot be disturbed on appeal. Id.
At trial, Joanna offered her own handwritten notes that reflected estimated values for the couple's household goods. Although Michael cross-examined Joanna regarding the values she placed on several of those assets, he did not offer any alternative valuations for that property. Michael concedes that Joanna's valuations were uncontested. Since Michael offered no alternative valuations, the magistrate did not abuse his discretion in accepting Joanna's valuation that estimated the value of the household property at $48,000.
Michael next contends that the magistrate failed to credit him with a mortgage on property that Joanna kept, namely, the houseboat, which had been paid off with a second mortgage on the marital property. The findings of a trial court will be upheld where the record contains some competent evidence to support those findings. Fletcher v. Fletcher (1994), 68 Ohio St.3d 464, 468. The record conclusively demonstrates that the magistrate correctly credited Michael with both mortgages on the marital residence.
According to Michael's own statement of assets, both mortgages on the marital residence amounted to approximately $106,000. According to Michael's asset statement, the home's first mortgage was in the amount of $52,000, while the second mortgage was in the amount of $56,000. Michael and Joanna had used the second mortgage to pay off the houseboat, which the magistrate valued at $36,000. The residence itself had been appraised at $155,000 to $165,000.
The final property division shows that the magistrate valued the home at $47,800, which constituted the "[r]esidence less mortgage." Once the magistrate subtracted the mortgages and valued the marital residence, he went on to use that valuation to divide the parties' assets. We can only find that the home's $47,800 valuation reflects adjustments for both mortgages, and not, as Michael complains, only one.
Thus, competent, credible evidence exists that the magistrate credited Michael with both mortgages. The property division shows that the magistrate reduced the residence's value by both mortgages totaling $106,000, then equitably divided the remaining assets. While Joanna kept the houseboat, which had been valued at $36,000, Michael kept the Bayliner, which had also been paid off by the second mortgage. If anything, Joanna received an asset that had decreased in value while Michael received credit for the entire $56,000 second mortgage and the $7,000 Bayliner. The record contains competent evidence showing the magistrate correctly credited Michael with the second mortgage.
The trial court did not abuse its discretion when it adopted the magistrate's valuation and distribution of the parties' marital assets. Appellants' third assignment of error is overruled.
Judgment affirmed.
YOUNG and VALEN, JJ., concur.
[1] The record contains no explanation for the $450 discrepancy between the amount awarded to Michael and Joanna and the estimated value of this property.
[2] When addressing this issue, several other appellate courts have added an abuse of discretion standard to the analysis. SeeRochow v. Rochow (Apr. 26, 1996), 1996 WL 227763 at *3, Mahoning App. No. 94 C.A. 49, unreported; Skaggs v. Skaggs (June 23, 1995), 1995 WL 368838 at *2, Marion App. No. 9-94-60, unreported. We decline to incorporate an abuse of discretion standard, since the minimal right to an opportunity to be heard is not discretionary.
[3] Heffernan does not encompass an abuse of discretion standard, finding only "reversible error."
[4] Because Mabel made substantive admissions and the court heard this evidence, the court's decision did not constitute the default judgment prohibited in divorce proceedings under Civ.R. 75(F). See Rochow, 1996 WL 227763 at *3.